Thomas **SCAMAN** and **MBC, Inc., A Missouri Corporation, Plaintiffs-Respondents,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Defendant-Appellant.**

**No. WD 38915.**

Missouri Court of Appeals, Western District.

Aug. 11, 1987.

Rich Tiemeyer, Chief Counsel, Jefferson City, Thomas B. Gilliam, Jr., Kirkwood, for defendant-appellant.

1. All statutory references are to RSMo 1978.

Lawrence R. McClure, Marshall, for plaintiffs-respondents.

Before TURNAGE, P.J., and BERREY and GAITAN, JJ.

BERREY, Judge.

On January 12 and 19, 1982, the Missouri Highway and Transportation Commission sent respondents notice that their outdoor advertising sign, erected after March 30, 1972, was in violation of spacing and location specifications set forth in § 226.520 and § 226.540 RSMo 1978[1] and that removal was required. Upon Administrative Review, the Commission held that the notice to remove the outdoor advertising sign was properly issued. The circuit court reversed and this appeal ensued.

At the administrative hearing, Ron Bergschneider, a Permit Inspector for the Commission, testified the sign is located adjacent to Route 65, on the east side, approximately .25 miles north of Route I–70 in Saline County. Bergschneider indicated Saline County does not have any comprehensive zoning ordinances and that Route 65 is part of the primary highway system.

Bergschneider described the history of the structure. He stated there was a prior non-conforming sign at that location which was a five pole structure in a V–shaped construction made of tin, and was a permitted sign. He testified that in 1980, after a four year period in which the property had "changed hands" numerous times, no biennial inspection fee was paid on the sign and that the sign showed evidence of deterioration. At this time, he voided the permit. He stated the sign underwent remodeling in which two poles were added on each end to enlarge it, and substantial lighting was attached. Although the sign retained its V–shape construction, plywood formed the structure rather than tin. These extensive renovations were of sufficient nature to constitute a new sign after the pertinent date of March 1972.

The uncontradicted testimony concerning the statutory violations is as follows:

Q. What is the alleged unlawfulness of this subject sign?

A. The sign was erected after March 30, 1972, contrary to spacing provisions and location provisions.

Q. What is the spacing violation?

A. It is located within 500 feet of the beginning or the ending of a ramp.

Q. What's the location violation?

A. It is not within 600 feet of a commercial or industrial activity.

(Emphasis added.)

Under § 226.520 no outdoor advertising shall be erected or maintained within 600 feet of the nearest edge of the right of way, visible from the main traveled way of any highway which is a part of the interstate or primary system, unless, among other exceptions, it is located in an "unzoned or commercial area" defined in § 226.540(4) and must conform to certain regulations specified under § 226.540(1)(2) and (3). At issue is the specification under § 226.540.(3)(a)b which deals with the spacing of signs on "[i]interstate highways and freeways in the federal-aid primary system." It states in part:

> Outside of incorporated municipalities, no structure may be located adjacent to or within five hundred feet of an interchange, intersection at grade, or safety rest area. Said five hundred feet shall be measured from the beginning or ending of the pavement widening at the exit from or entrance to the main traveled way.

The Commission argues Bergschneider's testimony, set out above, was substantial and competent evidence of this spacing violation. The trial court on review found it was not. The respondent Scaman, the sign owner, contends Bergschneider's testimony was ambiguous: the pronoun "it" referred, not to the noun sign, but to the immediate antecedent, "spacing violation."

■ From a cold record, respondents' grammatical argument may possess some validity, however, because a witness' testimony is often embellished by his conduct and demeanor, the trier of fact, or in this instance, the Commission, could have reasonably concluded Bergschneider's "it"

was referencing the outdoor advertising sign. It is the function of the administrative agency to make factual determinations and if the evidence would warrant either of two opposed findings, this reviewing court must uphold the finding of the agency. *Osage Outdoor Advertising v. State Highway Commission,* 687 S.W.2d 566, 568 (Mo.App.1984).

The Commission's decision that a spacing violation existed posed additional problems for the trial court. The trial court found the Commission erroneously stated, in its conclusions of law, that the sign violated § 226.540.(3)(b)a which "prohibits signs adjacent to *primary-freeway* (emphasis added) highways outside of incorporated municipalities from being located within 500 feet of an interchange." The statute actually states the spacing regulation applies to "[i]nterstate highways and freeways in the federal-aid primary system." § 226.540.-3(a). The trial court, however, similarly failed to use the proper statutory language when it stated the provision applies to "interstate highways and interstate freeways on the federally [sic] primary system." The trial court stated the provision did not apply to non-interstate highways and freeways.

Under § 226.500, which states the general purpose of the Billboard Act, the legislature "declares it to be the policy of this state that the erection and maintenance of outdoor advertising in areas adjacent to the *interstate and primary systems* be regulated in accordance with sections 226.500 to 226.600...." (Emphasis added). The definitional section of the Billboard Act in § 226.510 states the following:

(1) "Freeway primary highway", that part of a primary highway system which has been constructed as divided, dual lane fully controlled access facilities with no access to the throughways except the established interchanges;

(2) "Interstate system", that portion of the national system of interstate highways located within the boundaries of Missouri, as officially designated or may be hereafter designated by the state highways and transportation commission

with the approval of the Secretary of Transportation, pursuant to Title 23, United States Code, as amended;

....

(4) "Primary system", that portion of the highways of this state officially designated by the state highways transportation commission as being in the primary highway system as authorized by the constitution and laws of Missouri.

■ From the purpose of the Billboard Act and accompanying definitions, we note that the highways are broken down into two systems: (1) the interstate system; and (2) the primary highway system. The spacing regulations in § 226.540.(3)(a)b states it applies to both systems.[2] The trial court was incorrect in its interpretation that § 226.540.(3)(b) applies only to those highways on the interstate system. Although the Commission did not use the exact language of the statute, this court cannot require the "precise terminology courts strive for" from an administrative body like the Commission. *McKenna v. Personnel Advisory Board*, 702 S.W.2d 548, 551 (Mo.App.1985); *Citizens State Bank v. State Banking Bd.*, 602 S.W.2d 895, 897 (Mo.App.1970). We find the testimony of permit inspector, Bergschneider, that Route 65 at this location was a "freeway, primary highway" was substantial and competent evidence that Route 65 was in the second category specified in the statute.

■ The Commission also found respondents' sign violated the location restrictions of § 226.520(4) and § 226.540(4), and (5)[3]

because the sign was not located within 600 feet of a commercial or industrial activity. The trial court found and the respondents now argue on appeal that the Commission erred in its conclusion of law by stating "signs located within 600 feet of an unzoned commercial or industrial *establishment* when located in a county without zoning regulations" are permissible; the trial court took exception to the Commission's use of the word "establishment" instead of the statutory language of "unzoned commercial or industrial *land*." Bergschneider had testified the sign was not within 600 feet of a commercial or industrial activity and, based on this testimony, the Commission stated in the next paragraph after its misnomer that the sign violated §§ 226.520(4) and 226.540.(4) and (5). As previously mentioned, an administrative body, like the Commission, is not held to an exacting standard in which reversal would be warranted where it failed to use the precise statutory language. This is particularly so where there is substantial and competent evidence in the record to support a finding that there has been a statutory violation.

Finally, respondents present the same argument that there was a lack of substantial and competent evidence to support the location violation because of Bergschneider's ambiguous reference to "it" when alluding to the sign. This court disposes of this argument in the same manner as discussed above.

Based on the foregoing, this court reverses the decision of the circuit court and

---

**2.** The Billboard Act was enacted in accordance with the federal government's Highway Beautification Act of 1965. For an excellent article on this subject, *see* Cunningham, Billboard Control Under Highway Beautification Act of 1965, 71A Mich.L.Rev. 1296 (1973). In this article, Cunningham points out that generally the states' compliance laws deal with areas along the interstate system and the primary system but that some laws go further and put controls on areas adjacent to turnpikes, secondary highways and scenic highways. *Id.* at 1330.

**3.** Under the unzoned commercial and industrial area exception to the general rule that no sign shall be permitted within 660 feet of the nearest edge of the right of way of any interstate or

primary highway, it takes in an "area not zoned by state or local law or ordinance and on which there is located one or more permanent structures used for a commercial business or industrial activity or on which a commercial or industrial activity is actually conducted whether or not a permanent structure is located thereon, together with the area along the highway extending outwardly six hundred feet from and beyond the edge of such activity. All measurements shall be from the outer edges of the regularly used improvements, buildings, parking lots, landscaped, storage or processing areas of the commercial or industrial activity and along and parallel to the edge of the pavement of the highway." § 226.540(4).

directs the court to enter judgment affirming the order of the Commission.

All concur.